IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES P. BOHANAN,

                              Petitioner,                    OPINION AND ORDER

        v.                                                   13-cv-808-wmc

SCOTT ECKSTEIN, Warden,
Green Bay Correctional Institution,

                              Respondent.

James Bohanan, a state prisoner, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from his 2009 conviction in Dane County Circuit Court for first-degree intentional homicide.  The petition presents two grounds for relief that were already rejected on their merits by the Wisconsin Court of Appeals:  (1) the trial court denied petitioner his right to confrontation and to present a defense by limiting the scope of his cross-examination of a State's witness; and (2) the trial court violated the hearsay rule by permitting the state to introduce a prior inconsistent statement from a witness who testified at trial.[1]  Because petitioner has failed to show that either ruling violated his federal constitutional rights, his application for federal habeas relief must be denied.

---

[1]Petitioner also sought relief on the ground that his right to effective assistance of counsel had been violated when his attorney failed to challenge the criminal complaint.  In a previous order, this court dismissed that claim after finding it facially meritless.  (May 7, 2018 Order (dkt. # 34 ) 5.)

FACTS[2]

## A. Trial Court Proceedings

In 2007, Bohanan was charged with first-degree intentional homicide for the shooting death of Kevin Cobbins.  Cobbins died after suffering a total of 11 to 13 individual gunshot wounds, including two to his head.  The state's theory of the case was that Bohanan acted out of revenge for Cobbins having "stolen" his girlfriend, Sherise Blair.

Before trial, both sides filed motions in limine.  Among other issues, the prosecution sought to introduce "other acts" evidence as to Bohanan's past behavior.  The prosecution also sought to prohibit the defense from introducing evidence that the victim was a drug dealer or user.  Ultimately, the court allowed the state to present evidence of Bohanan's past conduct toward the victim and others, including:  Bohanan's use of a gun; threats Bohanan made against the victim; physical violence Bohanan perpetrated against the victim; Bohanan's previous attempt to shoot the victim; Bohanan's use of a gun in confrontations with others; Bohanan's statements about using weapons to resolve disputes; and Bohanan's attempts to evade capture.  (Pretrial Mot. Hrg. (dkt. #37-20) 64-86.)  However, the court reserved on whether the defense would be permitted to present evidence of Cobbins's drug dealing or use until it could determine the relevance and probative value of such evidence based on the actual trial testimony.  (*Id.*  23-25.)

---

[2] These facts are drawn from the record of the trial court proceedings, as well as the Wisconsin Court of Appeals' decision in *State v. Bohanan*, 2012 WI App 88, 343 Wis. 2d 677, 819 N.W.2d 562 (unpublished disposition).

At trial, five different eyewitnesses testified they saw Bohanan shoot Cobbins multiple times, including several shots at close range after he had already fallen to the ground.  In addition to this eyewitness testimony, other individuals not present at the scene testified to Bohanan's behavior before and after the shooting.

Sherise Blair also testified that she had been romantically involved with the victim, Cobbins, at the time of the shooting, after having been romantically involved with defendant Bohanan in the past.  Blair further provided detailed testimony about Bohanan's anger, as well as his specific related threats and violent acts against Cobbins, and her view that Bohanan was Cobbins's only enemy.

During cross-examination of Blair, apparently to suggest an alternative explanation for Cobbins's murder, defense counsel attempted to elicit testimony that Cobbins engaged in drug trafficking.  Blair's testimony leading up to the state's objection to this inquiry was as follows:

> Q. Now, when you say that Mr. Cobbins had no enemies except [Bohanan], that's based upon your limited knowledge of Mr. Cobbins's affairs, right?
>
> A. Yeah.
>
> Q. Were you working during that time period?
>
> A. Yeah.
>
> Q. Was Mr. Cobbins working during that time period?
>
> A. No.
>
> Q. So there were many, many hours when you're at work and Mr. Cobbins was doing whatever he wanted to do, right?
>
> A. Yeah.

3

> Q. On July 27th of '07 did—did you use any drugs with Mr. Cobbins?
>
> A. No.
>
> Q. And was it your practice to use drugs?
>
> A. No.
>
> Q. Did Mr. Cobbins generally use drugs in front of you?
>
> A. No.
>
> Q. And do you—Have you ever been in a position to observe how Mr. Cobbins would obtain the drugs that he would be using?
>
> A. No.

(Tr. of Jury Trial, Day 4 (dkt. # 37-28) 125:2-23.)

The state then objected on relevance grounds. At sidebar, defense counsel argued that he was trying to establish that it was possible Cobbins had enemies other than Bohanan, noting that on direct Blair had testified that Cobbins had no other enemies. Accordingly, counsel argued, "it's relevant to show that if you engage in drug trafficking you make enemies[.]" (*Id*. 126:16-17.) The prosecutor responded that if counsel pursued that inquiry, then he would open the door to the state presenting evidence of Bohanan's drug dealing. (*Id*. 126:21-25.)

At that point, the court sustained the state's objection, explaining:

> Yeah. I don't see how asking whether he was a drug dealer or not, even if she were to say yes, leads to the next question that you would then presumably have to ask him, did he have any enemies as a result of his drug trafficking.

4

> I think you can ask her if she is aware of any other enemies that he's had, and I don't have any problems with that, but I don't see the relevance of going into whether or not he was dealing drugs.
>
> And I certainly wouldn't prohibit you from asking her if she knows about any other activities that he may have engaged in that would have created a situation where he had other enemies, but I don't think we need to be talking about drug dealing.

(*Id.* 127:1-14.)  Counsel then abandoned that line of inquiry.

The state also presented testimony by Arvetta Busch, who testified that she was romantically involved with defendant Bohanan at the time of the shooting.  Within hours of the shooting, at Bohanan's urging, Busch testified that she, Bohanan, and her children moved from Madison to Chicago.  On direct, Busch was asked about a phone call she made to her boss shortly after leaving Madison.  The following exchange took place, with no objection:

> Q:  What did you tell him?
>
> A:  I don't remember.
>
> Q:  Do you recall telling him that you were staying with your boyfriend, Bo, and that Bo got into an altercation on Hammersly?
>
> A:  No.
>
> Q:  Do you recall telling him that Bo did the shooting and that you are not coming back to work?
>
> A:  No.

(Tr. of Jury Trial, Day 2 afternoon (dkt. # 37-25) 34:13-21.)   Moreover, on cross-examination, Busch stated that she told her supervisor, Michael Wortham, that she was

not returning to Madison because people were *accusing* Bohanan of shooting Cobbins, and she feared retaliation.  (*Id*. 65:2-4.)  She also specifically denied telling Wortham that Bohanan had been the shooter or had been involved in the incident.  (*Id*.  65:19-25-66:1.)

The state then called Wortham to the stand.  Wortham testified that Busch called him a day or two after not appearing for work.  Over defense counsel's hearsay objection, the court allowed the state to question Wortham about what Busch had said to him on the phone, ruling that it was admissible as an inconsistent prior statement to Busch's trial testimony.  In response, Wortham testified that Busch said she was not returning to work because Bohanan had committed a shooting. (*Id*. 103:4-11.)  During a subsequent, three-way conversation, Wortham further testified that Busch told him and his boss that Bohanan had been involved in a homicide. (*Id*. 103:12-17.)   On cross-examination, however, Wortham appeared to walk back his testimony, explaining that Busch did *not* say that Bohanan had "committed a shooting," but only that he had "been in an altercation." (*Id*. 107:15-24).

Bohanan was convicted and sentenced to life in prison with no eligibility for release to extended supervision.

## B.  Direct Appeal

On direct appeal, as mentioned at the outset of this opinion, Bohanan argued, among other things, that two of the circuit court's evidentiary rulings denied his right to confrontation and a fair trial.  *First*, Bohanan argued that the court erred by precluding defense counsel from asking Blair whether she was aware that the victim was involved in drug dealing.  *Bohanan*, 2012 WI App 88, ¶ 8.   According to Bohanan, Cobbins's

6

involvement in dealing drugs constituted relevant, "other acts" evidence to negate the false impression that Bohanan was necessarily his *only* enemy, and thus, the only one who could have killed him.  *Id*. at ¶ 8.

The Wisconsin Court of Appeals rejected this argument given the lack of any offer of proof by defendant that Blair *would* have testified that Cobbins was involved in drug dealing if asked.  *Id*. at ¶ 9.  The court also rejected Bohanan's argument that even a "no" answer from Blair would have helped undermine her credibility, given that "Bohanan points to no evidence in the record establishing that Cobbins was a drug dealer.  Indeed, if that evidence already existed, Blair's testimony to that effect would have been unnecessary."  *Id* at ¶ 10.  Accordingly, the court found no basis for concluding that the circuit court's evidentiary ruling "in any way denied Bohanan his constitutional rights."  *Id*. at ¶ 10.

*Second*, Bohanan argued that the circuit court erred by admitting hearsay testimony from Wortham as to Busch reporting her reason for not coming into work was Bohanan being involved in a homicide.  In particular, Bohanan argued that Wortham's testimony as to Busch's statement constituted inadmissible hearsay, not subject to any exception, and that the circuit court erred by allowing the testimony as Busch's prior inconsistent statement.  *See* Wis. Stat. § 908.01(3) and (4)(a)1 (a statement is not hearsay if the declarant testifies at trial, is subject to cross-examination concerning the statement, and the statement is inconsistent with the declarant's testimony).

Here, Bohanan argued that Busch's statement was not a prior inconsistent statement because there was no foundation for that statement, such as testimony that Bohanan had

actually told Busch that he was involved in the shooting, and urged the court to reverse the conviction for plain error.  The Wisconsin Court of Appeals rejected this argument, explaining:

> Bohanan's argument misses the mark.  Busch testified that she did not tell Wortham that Bohanan had committed the shooting.  Wortham's testimony that Busch had told him that Bohanan had been involved in a homicide was a prior statement by Busch that was inconsistent with her trial testimony.  The testimony was therefore not hearsay under Wis. Stat. § 908.01(4)(a)1.  It was offered to impeach Busch's credibility, not to establish the truth of Busch's statement to Wortham.  Accordingly, the foundation for Busch's statement to Wortham was not relevant.

*Id*. at ¶ 12.

Bohanan also argued that, because Wortham admitted on cross-examination that Busch had said only that Bohanan had been involved in an "altercation," Busch's statement to Wortham was *not* inconsistent with her trial testimony.  Once again, the court of appeals was unpersuaded:

> Busch testified that she did not remember telling Wortham that Bohanan had been in an altercation, and that she told Wortham she was not returning to work because Bohanan had been accused of murdering someone. Wortham's testimony on cross-examination did not alter the fact that Wortham was offering a prior inconsistent statement that was made by Busch. We affirm.

*Id*. at ¶¶ 11-13.

Bohanan's appellate attorney filed a no-merit petition for review in the Wisconsin Supreme Court.  After Bohanan responded, seeking to raise both of the claims raised in the court of appeals, the Wisconsin Supreme Court denied Bohanan's petition for review.

In this federal habeas proceeding, Bohanan was permitted to pursue the same two claims that he raised but were rejected on the merits in the Wisconsin Court of Appeals: (1) his confrontation rights were violated when the trial court refused to permit counsel to ask Blair whether Cobbins was involved in drug dealing; and (2) the trial court erred in allowing Wortham to testify that Busch said Bohanan was involved in a homicide.

OPINION

**I.  Legal Framework**

Petitioner's eligibility for federal habeas relief is governed by 28 U.S.C. § 2254(d), which requires him to show that the state court's adjudication of his claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).   The decision federal courts look to is the "last reasoned state–court decision" to decide the merits of the case, *Flint v. Carr*, 10 F.4th 786, 796 (7th Cir. 2021), which in this case was the Wisconsin Court of Appeals.

Under this standard, federal courts may not even review state court decisions adjudicating federal constitutional claims *de novo*, but rather for "reasonableness." Moreover, for purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (O'Connor, J., concurring).   To show that a state court decision was

unreasonable, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Finally, the Supreme Court has explained that "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. IV. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Id*. at 315-16 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)). Thus, the right of confrontation "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Moreover, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 319 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

Even so, the opportunity for cross-examination is not unlimited; a court may "impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation

10

that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also Delaware v. Fensterer*, 474 U.S. 15, 20 (1984) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (per curiam) (emphasis in original).  Similarly, the right to present a defense is not absolute: rather, it exists alongside "well-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes*, 547 U.S. at 326.  That said, restrictions on a criminal defendant's right to cross-examine adverse witnesses and present evidence in his own defense "may not be arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 151 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

## II.  Cross-Examination of Blair

Under this lenient framework, the Wisconsin Court of Appeals reasonably applied "generally applicable constitutional principles" by upholding the trial court's refusal to allow petitioner's counsel to ask Blair if she had witnessed Cobbins engaged in drug dealing. *Sarfraz v. Smith*, 885 F.3d 1029, 1037 (7th Cir. 2018).  To begin, the court of appeals properly identified the controlling legal standard, noting that petitioner had a due process right to defend against the state's accusations and to present evidence.  *See Bohanan*, 2012 WI App 88, ¶ 8 (citing *State v. Evans*, 187 Wis. 2d 66, 82–83, 522 N.W.2d 554 (Ct. App. 1994) ("The due process rights of a criminal defendant are[,] 'in essence, the right to a fair opportunity to defend against the State's accusations.' The right to present evidence is

11

rooted in the Confrontation and Compulsory Process Clauses of the United States and Wisconsin Constitutions.") (citation omitted).   Next, the court reasonably held that petitioner was not denied a constitutional right to compulsory process or confrontation absent evidence in the record or an offer of proof that Cobbins *was* involved in dealing drugs, or at least that Blair would have offered such testimony. *Id*. at ¶ 10.  Similarly, the court explained that absent evidence of Cobbins's involvement in drug dealing, merely eliciting testimony from Blair to the effect that Cobbins was *not* involved would "not have lacked credibility on its face." *Id*.

Given the trial record, the Wisconsin Court of Appeals' reasoning was reasonable. Despite being offered the opportunity, petitioner presented no evidence establishing that Cobbins was involved in drug dealing, either in the form of a proffer or by testimony from any witnesses, including Blair.   Thus, his suggestion that Blair would have provided such testimony was utterly speculative.  Moreover, his proposed theory of defense -- that "drug dealers have enemies" and, therefore, some unnamed, unidentified enemy of Cobbins might have been the shooter – would have only invited rank speculation by the jury, at least without some evidence that Cobbins was dealing drugs at the party where he was killed, had been threatened in the past, or that drug dealing otherwise played some role in his murder.  Finally, petitioner was *not* precluded from cross-examining Blair's knowledge, if any, that Cobbins had any other enemies besides Bohanan, but counsel abandoned that question, presumably because Blair had already testified on direct that he did not.  In sum, there is no basis in this record to find the Wisconsin Court of Appeals unreasonably applied federal law in affirming the trial court's refusal to permit him to question Blair about

12

Cobbins's drug dealing under either petitioner's right to confrontation or to present a defense.

### III. Admission of Wortham's Testimony

With respect to Wortham's testimony, petitioner repeats his argument that the trial court should have precluded it as inadmissible hearsay. As noted previously, the court agreed with the state prosecutor that Wortham's testimony about what Busch told him during the phone call was admissible as a prior inconsistent statement by a witness under Wis. Stat. § 908.01(4). Subsection (4) states in relevant part:

> A statement is not hearsay if:
>
> (a) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
>
>     1. Inconsistent with the declarant's testimony, . . .

On appeal, petitioner did not deny that Busch's prior statement, as testified to by Wortham, was inconsistent with her direct testimony at trial -- specifically, she never told Wortham that petitioner had been involved in a shooting or altercation. Instead, petitioner argued that Busch's prior inconsistent statement should not have been admitted because the state failed to establish *how* Busch learned that petitioner had been involved in the shooting. In other words, he argued, there was no basis to conclude that Busch's purported, prior inconsistent statement to Wortham was reliable.

Unfortunately for petitioner, this is not a colorable argument for *habeas* relief. First, to the extent he continues to argue that Wortham's statement was inadmissible hearsay under Wisconsin law, he is simply incorrect. As quoted above, a prior inconsistent

statement made by a witness who is available for cross-examination at trial is *not* hearsay under Wis. Stat. § 908.01(4)(a)1.   As the Wisconsin Court of Appeals also observed, Busch's prior statement to Wortham *was* inconsistent with her direct testimony, having denied telling him that Bohanan had been involved in a shooting.   Moreover, petitioner had the opportunity to cross-examine Busch about her prior statement.   Therefore, her statement was admissible under Wisconsin law.

Second, even if the Wisconsin courts misapplied their own rules of evidence, such challenges generally do not present a cognizable claim for federal habeas relief, *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004), since it is not "the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).  Instead, the federal habeas court must evaluate a question otherwise reserved for state-court review where (1) a specific constitutional right is implicated or (2) "mechanistic application of state evidentiary rules may deprive criminal defendants of a fair trial." *Rice v. Bowen,* 264 F.3d 698, 702 (7th Cir. 2001); *see also Perruquet*, 390 F.3d at 511.

Petitioner suggests that the admission of Busch's prior statement to Wortham violated petitioner's Sixth Amendment right to "be confronted with the witnesses against him."   However, the Confrontation Clause is not implicated when an out-of-court declarant is subject to cross-examination at trial.  *See Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."); *California v. Green*, 399 U.S. 149, 158 (1970) ("[T]he Confrontation Clause is not violated

by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination"). Here, since Busch testified at trial, she was available for cross-examination regarding statements she made to Wortham. Accordingly, the admission of her prior inconsistent statements to Wortham did not deny petitioner his right to confrontation. Similarly, given petitioner had the opportunity to cross-examine both Busch and Wortham about their recollections as to what was said during their phone call -- as well as the multiple eyewitnesses who established petitioner as the person who murdered Collins -- there is no basis to conclude that the court's admission of Busch's prior inconsistent statement denied petitioner's right to a fair trial.

Accordingly, petitioner has failed to show that the Wisconsin Court of Appeals unreasonably applied any clearly established federal law in adjudicating his claims or that he is in custody in violation of any federal constitutional right and his petition for a writ of habeas corpus must be denied. Further, under Rule 11 of the Rules Governing § 2254 Cases, petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2) by making a substantial showing of the denial of a constitutional right or by presenting issues adequate to warrant further review. Therefore, the court will not issue a certificate of appealability.

ORDER

IT IS ORDERED that:

1) James Bohanan's application for a writ of habeas corpus is DENIED.

2) The clerk of court is directed to enter judgment for respondent and close this case.

3) No certificate of appealability shall issue.

Entered this 17th day of November, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

16